UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KHALID SHAKIR BARROW,<br><br>Plaintiff,<br><br>v.<br><br>SAN FRANCISCO SHERIFF'S DEPARTMENT, et al.,<br><br>Defendants. | Case No.17-cv-04483-VKD<br><br>**ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT WITHOUT PREJUDICE; GRANTING IN PART PLAINTIFF'S MOTION TO AMEND**<br><br>Re: Dkt. Nos. 20, 43 |

Plaintiff Khalid Shakir Barrow filed this action against defendants San Francisco Sheriff's Department and Deputies Ikaika Kaiwi, Ryan Deering, John Davidson, James Petrovits, and Jason Hearn[1] for violation of his constitutional rights under 42 U.S.C. § 1983. On August 6, 2018, defendants filed a motion for summary judgment as to Mr. Barrow's Fourteenth Amendment excessive force claims against Deputies Deering and Kaiwi and failure to protect claims against Deputies Hearn, Davidson, and Petrovits. Dkt. No. 20. On March 30, 2019, Mr. Barrow moved for leave to file a second amended complaint. Dkt. No. 43. The Court heard oral argument on Mr. Barrow's motion for leave to amend on April 30, 2019. Dkt. No. 50.

All parties have consented to magistrate judge jurisdiction. Dkt. Nos. 4, 16. Having considered the parties' moving papers and arguments made at the hearing, the Court denies without prejudice defendants' motion for summary judgment and grants in part Mr. Barrow's

---

[1] Mr. Barrow's complaint refers to this defendant as Deputy Hern. Dkt. No. 7. Defendants variously refer to him as Deputy Hern or Hearn. Dkt. No. 46 (Hern); Dkt. No. 20 (Hearn). The Court defers to the spelling indicated in Deputy Hearn's declaration in support of defendants' summary judgment motion. Dkt. No. 20-3.

motion for leave to amend.

## I.   BACKGROUND

### A.   Factual Background

Except where otherwise noted, the following facts are undisputed:

At the time of the events described in the operative complaint, Mr. Barrow was a pretrial detainee housed at the San Francisco County Jail in the B1 area of County Jail #4. Dkt. No. 21-1 at 11:3-23, 14:1-25; Dkt. No. 23 ¶¶ 3-4; Dkt. No. 23-1 at 1. He was 18 or 19 years old. Dkt. No. 19-3 at 000177; Dkt. No. 21-3 at 1. At approximately 1:00 a.m. on May 10, 2017, Jose Jimenez Martinez, an inmate also housed in B1, informed Deputy Kaiwi that he had been assaulted by two other inmates, Eric Perez and Carlos Hernandez, and that Mr. Barrow had "spit at him." Dkt. No. 23-1 at 1. Together with Deputies Deering, Petrovits, Davidson, Day, Neves, and Rodrigues,[2] Deputy Kaiwi conducted a visual "knuckle/body check" on the inmates housed in B1, including Mr. Barrow. *Id.*; Dkt. No. 21-1 at 17:19–19:7. Based on that check, Mr. Perez and Mr. Hernandez were handcuffed and escorted to interview rooms, as was a third inmate, Develle Morris, who merely inquired about what was going on. Dkt. No. 23-1 at 1; Dkt. No. 21-1 at 18:8-21; Dkt. No. 52 ¶¶ 3-6.

Deputy Davidson also identified Mr. Barrow as potentially involved in the altercation. Dkt. No. 22-1 at 1; Dkt. No. 21-1 at 19:8–20:5. Mr. Barrow denied spitting on anyone and protested being singled out.[3] Dkt. No. 23-1 at 2. Deputy Petrovits described Mr. Barrow as "argumentative and non-compliant," but Mr. Barrow testified that he complied with all orders even though he was upset at being accused of spitting on someone. *Compare* Dkt. No. 22-1 at 1 *with* Dkt. No. 21-1 at 19:8–20:5, 41:11–42:5. Deputy Petrovits handcuffed Mr. Barrow and, "using a bent wrist control hold," escorted him to an interview room. Dkt. No. 22-1 at 1; Dkt. No.

---

[2] Deputies Day, Neves, and Rodrigues are not named defendants.

[3] Mr. Barrow testified that he later confronted Mr. Jimenez Martinez, who told Mr. Barrow that he did not tell the deputies that Mr. Barrow had spit on him. Dkt. No. 21-1 at 36:4-22. At Mr. Barrow's request, Mr. Jimenez Martinez submitted a grievance statement to that effect—which Mr. Barrow attaches to his opposition brief—stating that "due to my English being bad I was misunderstand [*sic*]. I never said inmate Barrow[] attacked me or spit on me." Dkt. No. 27-1.

21-1 at 19:22–21:5.

## 1.    The interview room

The parties differ as to precisely what happened next.

According to Mr. Barrow, as he and Deputy Petrovits walked to the interview room, another deputy was behind him, and he saw Deputies Deering and Kaiwi. Dkt. No. 21-1 at 19:24–21:7. He testified that once they reached the interview room, Deputies Deering and Bushnet[4] assisted Deputy Petrovits in picking Mr. Barrow up in the air and slamming him onto the ground on his stomach, yelling at Mr. Barrow, "Get the fuck on your stomach." *Id.* at 23:5–25:3. Mr. Barrow responded, "I am on my stomach." *Id.* at 24:10-13. As he was on his stomach, the deputies placed their knees on his back and neck. *Id.* The deputies then removed the handcuffs and left Mr. Barrow alone in the interview room by himself. *Id.* at 25:11-19.

Mr. Morris submitted a declaration in support of Mr. Barrow's opposition to summary judgment in which Mr. Morris testified that after he was placed in an interview room, he witnessed Mr. Barrow being placed in the interview room next door. Dkt. No. 52 ¶ 8. He testified that as Mr. Barrow entered the interview room, he heard "a loud thud," the deputies say, "Get the fuck down on your stomach," and Mr. Barrow respond, "I'm already down." *Id.* ¶ 9.

According to Deputy Petrovits, no other deputies were in the interview room with him when he brought Mr. Barrow in. Dkt. No. 22 ¶ 7. In the incident report Deputy Petrovits authored, he states that he told Mr. Barrow to get on his knees so that Deputy Petrovits could exit the room safely, but "[i]nstead [Mr.] Barrow tensed up and attempted to spin around." Dkt. No. 22-1 at 1. Deputy Petrovits then "utilized a leg sweep takedown and proned [Mr.] Barrow out." *Id.* He then ordered Mr. Barrow to remain on the ground while he exited the interview room. *Id.* Just as Deputy Petrovits closed the door, Deputy Davidson arrived. *Id.* Deputy Davidson testified that he saw Mr. Barrow "jump up and charge at the door of the interview room after Deputy Petrovits had closed it." Dkt. No. 20-2 ¶ 7. Because of that act, and because he was "argumentative and non-compliant with Deputy Petrovits," Deputy Davidson determined that Mr.

---

[4] Deputy Bushnet is not a named defendant.

Barrow was a danger to others and therefore should be placed in a safety cell. *Id.*

### 2. The safety cell

The parties also differ regarding the events that followed.

According to Mr. Barrow, after Deputy Petrovits left him alone in the interview room, he stood up and attempted to straighten his clothing while still out of breath. Dkt. No. 21-1 at 25:20-25. No more than 30 seconds after Deputy Petrovits left, Deputies Davidson, Deering, and Kaiwi rushed back into the interview room. Mr. Barrow testified that Deputies Davidson and Deering picked him up and slammed him on the ground again. *Id.* at 25:20–26:15. Deputy Deering kicked Mr. Barrow in the left shin, causing him to bleed. *Id.* at 26:3-20. Deputy Deering took handcuffs from Deputy Kaiwi and cuffed Mr. Barrow's hands behind his back very tightly, "almost to the last click," such that the cuffs dug into Mr. Barrow's skin and caused him pain in his hand and wrist. *Id.* at 26:21–28:3. Deputies Deering and Kaiwi then jerked Mr. Barrow to his feet, forcing his head down and arms up, and forcing him to move backward. *Id.* Mr. Barrow pleaded with the deputies to loosen the cuffs, but instead of doing so, Deputy Deering squeezed on the cuffs, while Deputy Kaiwi laughed at Mr. Barrow and also squeezed on the cuffs. *Id.* at 27:18–28:5. Deputies Deering and Kaiwi dragged Mr. Barrow to the safety cell as Mr. Barrow continued to plead with them to loosen the cuffs. *Id.* at 27:24–28:15.

Mr. Morris's testimony is consistent with Mr. Barrow's. Mr. Morris states that the deputies left Mr. Barrow in the interview room and returned in less than a minute. Dkt. No. 52 ¶ 10. When they returned, Mr. Morris heard loud thuds and Mr. Barrow scream out in pain. *Id.* ¶ 11. He then saw Mr. Barrow "twisted in a weird position as he was taken down" to the safety cell. *Id.* ¶ 12. He heard Mr. Barrow pleading with Deputies Deering and Kaiwi to stop squeezing the handcuffs and that they were hurting him. *Id.* ¶ 13. He heard Mr. Barrow screaming in pain as he was taken to the safety cell, with Deputy Hearn also present. *Id.* ¶ 14.

Once they reached the safety cell, Mr. Barrow testified that Deputy Deering grabbed Mr. Barrow's hair and smashed Mr. Barrow's head against the wall. Dkt. No. 21-1 at 28:16-19, 29:20–31:1. Deputy Deering then grabbed Mr. Barrow's shirt, yanked Mr. Barrow to his knees, and began ripping Mr. Barrow's clothing off. *Id.* at 28:19-22, 31:3-20. Deputy Kaiwi told Mr.

4

Barrow, "Shut the fuck up and take it like a man." *Id.* at 28:23-24, 31:21-23. Mr. Barrow then felt Deputy Deering reach around to grab Mr. Barrow's genitals and insert his finger into Mr. Barrow's anal cavity. *Id.* at 28:25–29:8, 31:23–32:10. The deputies then left the safety cell. *Id.* at 32:18-19.

According to defendants, Deputies Deering, Hearn, Kaiwi, and Neves brought Mr. Barrow from the interview room to the safety cell under the supervision of Deputy Davidson. Dkt. No. 20-2 ¶ 8; Dkt. No. 20-1 ¶ 6; Dkt. No. 20-3 ¶ 6; Dkt. No. 22 ¶ 8; Dkt. No. 23 ¶ 7. Deputies Deering, Davidson, Hearn, Petrovits, and Kaiwi all testified that Mr. Barrow was placed inside the safety cell without incident. Dkt. No. 20-1 ¶ 7; Dkt. No. 20-2 ¶ 8; Dkt. No. 22 ¶ 8; Dkt. No. 23 ¶ 7; *see* Dkt. No. 20-3 ¶¶ 7-8.

With respect to the use of force, Deputy Deering says he used "a standard control hold" on Mr. Barrow while escorting him from the interview room to the safety cell, which entailed "bending a subject's wrists behind their back while handcuffed for safe transport." Dkt. No. 20-1 ¶ 6. None of the deputies recall Mr. Barrow complaining about the tightness of the handcuffs or anything unusual occurring on the way to the safety cell. *Id.*; Dkt. No. 20-2 ¶ 8, Dkt. No. 20-3 ¶¶ 3, 7; Dkt. No. 22 ¶¶ 8-9, Dkt. No. 23 ¶ 7. Deputy Deering testified that other than the control hold, he did not use any force on Mr. Barrow. Dkt. No. 20-1 ¶ 10. Deputy Davidson testified that other than Deputy Deering's use of the control hold, he did not witness any force used on Mr. Barrow. Dkt. No. 20-2 ¶ 8. Deputies Petrovits and Kaiwi testified that they did not witness any deputies use force on Mr. Barrow. Dkt. No. 22 ¶ 9; Dkt. No. 23 ¶ 7. Deputy Hearn testified that he did not witness any deputies use force on Mr. Barrow, although he also admitted he has no independent recollection of the incident. Dkt. No. 20-3 ¶ 7.

Deputy Deering further testified that Mr. Barrow complied with all commands and that Mr. Barrow was searched for weapons and contraband. Dkt. No. 20-1 ¶ 7. He denied being present in the interview room with Deputy Petrovits, kicking or slamming Mr. Barrow, smashing Mr. Barrow's head against the safety cell wall, grabbing Mr. Barrow's genitals, or inserting his finger into any of Mr. Barrow's body cavities. *Id.* ¶¶ 8-9, 11-12.

After the events in the safety cell, Mr. Barrow showed Deputy Davidson his swollen and

numb wrist and asked to be seen by a nurse, who eventually gave Mr. Barrow some medication. Dkt. No. 21-1 at 32:20–33:25. According to Deputy Davidson, Mr. Barrow did not state that he had been physically or sexually assaulted. Dkt. No. 20-2 ¶ 9. Mr. Barrow testified that he told the nurse that he had been beaten up and tried to show her his injuries, but she did not say anything in response. Dkt. No. 21-1 at 37:18–38:6.

Medical records indicate that jail medical personnel visited Mr. Barrow in the safety cell eight times on May 10, 2017. Dkt. No. 19-3 at 00082–00090. The records do not mention any claims by Mr. Barrow on May 10 that the deputies assaulted him, although they note that he had "no shirt on" and that he sustained a hand/wrist injury "during safety cell placement" "in a scuffle with SFSD." *Id.* at 00082, 00088. Mr. Barrow reported pain, swelling, numbness and tingling, and limited range of motion in his left hand and wrist. *Id.* at 00084. Medical providers subsequently diagnosed Mr. Barrow with a bruised radial nerve resulting from "tight cuffing," and he continued to report pain, numbness, and tingling in his hand and wrist for almost a year after the May 10 incident. *Id.* at 00094, 000108–000113, 000191–000192, 000195–000197, 000206–000209, 000215, 000218, 000220–000221, 000226.

On June 9, 2017, Mr. Barrow filed a formal grievance regarding the May 10 incident, in which he described the touching of his "private parts" as done "intentionally or unintentionally." Dkt. No. 21-3 at 1. The first express mention in the medical records of deputies using any kind of excessive force on Mr. Barrow appears on June 10, 2017, when Mr. Barrow stated that "he was placed in the safety cell for no reason and beat by SFSD" and requested to speak to someone regarding his post-traumatic stress disorder. Dkt. No. 19-3 at 000107. The medical records do not contain any mention of anyone sexually assaulting Mr. Barrow. *See* Dkt. No. 19-3.

**B.      Procedural Background**

Mr. Barrow filed this action pro se on August 7, 2017. Dkt. No. 1. The Court screened Mr. Barrow's complaint pursuant to 28 U.S.C. § 1915A and ordered him to file a first amended complaint ("FAC"), which Mr. Barrow filed on November 24, 2017. Dkt. Nos. 5, 7. The FAC is the operative complaint. On February 6, 2018, the Court determined that Mr. Barrow had stated claims for excessive force against Deputies Deering and Kaiwi and failure to protect claims

1  against Deputies Hearn, Davidson, and Petrovits, and set a schedule for further proceedings in the
2  case, including briefing on a motion for summary judgment.  Dkt. No. 8 at 3.

3       Defendants filed the motion for summary judgment now before the Court on August 6,
4  2018.  Dkt. No. 20.  After briefing on defendants' summary judgment motion had closed and the
5  matter was fully submitted, Mr. Barrow obtained counsel and filed a motion for leave to amend
6  the complaint.  Dkt. Nos. 32, 43.

## II.    DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

### A.    Legal Standard

9       A party may move for summary judgment on a "claim or defense" or "part of . . . a claim
10  or defense."  Fed. R. Civ. P. 56(a).  Summary judgment is appropriate when, after adequate
11  discovery, there is no genuine issue as to any material facts and the moving party is entitled to
12  judgment as a matter of law.  *Id.*; *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).
13  Material facts are those that might affect the outcome of the case.  *Anderson v. Liberty Lobby, Inc.*,
14  477 U.S. 242, 248 (1986).  A dispute as to a material fact is "genuine" if there is sufficient evidence
15  for a reasonable jury to return a verdict for the nonmoving party.  *Id.*

16       A party seeking summary judgment bears the initial burden of informing the court of the basis
17  for its motion, and of identifying those portions of the pleadings and discovery responses that
18  demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477 U.S. at 323.  Where the
19  moving party will have the burden of proof at trial, it must affirmatively demonstrate that no
20  reasonable trier of fact could find other than for the moving party.  *Southern Calif. Gas. Co. v. City of*
21  *Santa Ana*, 336 F.3d 885, 888 (9th Cir. 2003).

22       On an issue where the nonmoving party will bear the burden of proof at trial, the moving party
23  may discharge its burden of production either (1) by "produc[ing] evidence negating an essential
24  element of the nonmoving party's case" or (2) after suitable discovery, by "show[ing] that the
25  nonmoving party does not have enough evidence of an essential element of its claim or defense to
26  discharge its ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos.,*
27  *Inc.*, 210 F.3d 1099, 1103 (9th Cir. 2000); *see also Celotex*, 477 U.S. at 324–25.

28       Once the moving party meets its initial burden, the opposing party must then set forth

United States District Court
Northern District of California

specific facts showing that there is some genuine issue for trial in order to defeat the motion. *See* Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 250. "A party opposing summary judgment may not simply question the credibility of the movant to foreclose summary judgment." *Anderson*, 477 U.S. at 254. "Instead, the non-moving party must go beyond the pleadings and by its own evidence set forth specific facts showing that there is a genuine issue for trial." *Far Out Prods., Inc. v. Oskar*, 247 F.3d 986, 997 (9th Cir. 2001) (citations and quotations omitted). The non-moving party must produce "specific evidence, through affidavits or admissible discovery material, to show that the dispute exists." *Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 1991). Conclusory or speculative testimony in affidavits and moving papers is insufficient to raise a genuine issue of material fact to defeat summary judgment. *Thornhill Publ'g Co., Inc. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

### B.       Discussion

Defendants move for summary judgment on Mr. Barrow's excessive force claim against Deputies Kaiwi and Deering and his failure to protect claim against Deputies Hearn, Davidson, and Petrovits. Dkt. No. 20 at 5–10. Defendants also contend that they are entitled to qualified immunity. *Id.* at 10–12.

### 1.       Excessive force claim (Deputies Kaiwi and Deering)

To prevail on an excessive force claim, a pretrial detainee must show that the "force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). Whether the use of force was objectively unreasonable "turns on the 'facts and circumstances of each particular case.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)). A court must make this determination from the perspective of a reasonable official on the scene, including what the official knew at the time, not with the 20/20 vision of hindsight. *Id.* A court "must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)) (alterations in original). Factors that may

bear on the reasonableness of the force used include "the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Id.* (citing *Graham*).

Defendants contend that Mr. Barrow cannot prevail on a claim of excessive force against either Deputy Deering or Deputy Kaiwi as a matter of law. Dkt. No. 20 at 5–7. The question on summary judgment is whether a trier of fact, viewing the evidence in the light most favorable to Mr. Barrow, could find in his favor. *See Nehad v. Browder*, --- F.3d ---, 2019 WL 3023147, at *3, 4 (9th Cir. 2019).

### a. Deputy Deering

According to Mr. Barrow, Deputy Deering used excessive force against him on five occasions: (1) slamming Mr. Barrow down to the ground in the interview room with Deputy Petrovits after Mr. Barrow first entered the room; (2) slamming Mr. Barrow on the ground a second time in the interview room before he was taken to the safety cell; (3) kicking Mr. Barrow in the shin; (4) handcuffing Mr. Barrow too tightly and squeezing on the cuffs; (4) slamming Mr. Barrow's head against the safety cell wall; and (5) grabbing Mr. Barrow's genitals and inserting his finger into Mr. Barrow's anal cavity. Dkt. No. 27 at 6–7. Mr. Morris's testimony and some of Mr. Barrow's medical records corroborate Mr. Barrow's account. Dkt. No. 52 ¶¶ 9-14. While Deputy Deering acknowledges that he used a control hold to escort Mr. Barrow to the safety cell and that he searched Mr. Barrow for weapons and contraband, he otherwise disputes Mr. Barrow's account of their interaction. Dkt. No. 20-1 ¶¶ 6-12. Defendants also argue that neither Mr. Barrow's grievance nor his medical records include allegations of physical or sexual assault. Dkt. No. 20 at 6–7.

The Court concludes that a reasonable jury could credit Mr. Barrow's account over Deputy Deering's, and that such a jury could find that Deputy Deering's use of force was not objectively reasonable. *See, e.g.*, *Gomez v. City of Fremont*, 730 F. Supp. 2d 1056, 1064 (N.D. Cal. 2010) (denying summary judgment on excessive force claims because the evidence—including the

9

police reports, the officers' declarations, and plaintiff's deposition—showed genuine and disputed issues of material fact about what happened and the reasonableness of the officers' conduct and use of force, which could not be resolved without weighing the evidence and determining credibility, which are jury functions). As the evidence in the record before the Court reflects several disputed issues of material fact, including whether the conduct complained of occurred at all, the Court denies defendants' summary judgment motion as to the excessive force claim against Deputy Deering.

### b.      Deputy Kaiwi

According to Mr. Barrow, Deputy Kaiwi used excessive force against him when Deputy Kaiwi squeezed on the over-tight handcuffs. Dkt. No. 21-1 at 27:21-24 ("And they are laughing at me, and *they* continue to squeeze on the cuffs. So now *they're* squeezing on the cuffs, like Deering, squeezing on the cuffs; *then Kaiwi laughing, and he's squeezing on the cuffs*.") (emphases added). Again, Mr. Morris's testimony and some of Mr. Barrow's medical records corroborate Mr. Barrow's account. Dkt. No. 52 ¶¶ 9-14. Deputy Kaiwi denies that he used any force against Mr. Barrow. Dkt. No. 23 ¶ 7. Defendants argue that Mr. Barrow cannot prevail on his excessive force claim against Deputy Kaiwi because Deputy Kaiwi merely was present during the incident. Dkt. No. 20 at 5. However, the Court concludes that a reasonable jury could credit Mr. Barrow's account over Deputy Kaiwi's, and such a jury could then find both that Deputy Kaiwi did use force when he squeezed on Mr. Barrow's over-tight handcuffs and that such force was not objectively reasonable. *Gomez*, 730 F. Supp. 2d at 1064. As the evidence in the record before the Court reflects several disputed issues of material fact, including whether the conduct complained of occurred at all, the Court denies defendants' summary judgment motion as to the excessive force claim against Deputy Kaiwi.

### 2.      Failure to protect claim (Deputies Hearn, Davidson, and Petrovits)

To prevail on a claim for failure to protect, Mr. Barrow must show that (1) the defendant made an intentional decision with respect to the conditions under which the plaintiff was confined; (2) those conditions put the plaintiff at substantial risk of suffering serious harm; (3) the defendant did not take reasonable available measures to abate that risk, even though a reasonable official in

the circumstances would have appreciated the high degree of risk involved—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the plaintiff's injuries. *Castro v. Cty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016). The defendant's conduct must be objectively unreasonable, a test that depends on the facts and circumstances of each particular case. *Id.* (citing *Kingsley*, 135 S. Ct. at 2473).

According to Mr. Barrow, Deputies Hearn, Davidson, and Petrovits did not intervene or attempt to stop Deputies Deering and Kaiwi from using excessive force on Mr. Barrow when escorting him from the interview room to the safety cell, even though he was screaming in pain and they had an opportunity to intervene. Dkt. No. 27 at 8–9. Deputy Hearn testified that he has no independent recollection of the incident on May 10. Dkt. No. 20-3 ¶ 3. After reviewing Deputy Petrovits's incident report, Deputy Hearn testified that he believes he assisted Deputies Deering and Neves in transporting Mr. Barrow from the interview room to the safety cell. *Id.* ¶ 6. Deputy Hearn also testified that he did not witness any other deputies use force on Mr. Barrow, despite his statement that he does not remember the events in question. *Id.* ¶ 7. Defendants' declarations submitted in support of summary judgment all concur that Deputy Hearn was present when Mr. Barrow was moved from the interview room to the safety cell. Dkt. No. 20-2 ¶ 8; Dkt. No. 20-1 ¶ 6; Dkt. No. 20-3 ¶ 6; Dkt. No. 22 ¶ 8; Dkt. No. 23 ¶ 7. Mr. Morris also testified that he saw Deputy Hearn by Mr. Barrow's side as Mr. Barrow was taken to the safety cell. Dkt. No. 52 ¶ 14.

Deputy Davidson testified that he supervised Mr. Barrow's removal from the interview room to the safety cell and did not observe any force being used during the escort. Dkt. No. 20-2 ¶¶ 8-9. Likewise, Deputy Petrovits testified that he observed Deputies Deering, Neves, and Hearn escort Mr. Barrow to the safety cell and place him inside without incident or any use of force. Dkt. No. 22 ¶¶ 8-9.

Defendants contend that no evidence supports Mr. Barrow's claim that Deputies Hearn, Davidson, and Petrovits failed to protect him by permitting Deputies Deering and Kaiwi to use excessive force against him. Dkt. No. 20 at 8–10. Defendants rely on the absence of evidence directly contradicting Deputies Hearn, Davidson, and Petrovits's testimony that they did not

witness any excessive force used against Mr. Barrow, arguing that Mr. Barrow did not mention Deputies Hearn and Petrovits when asked about each instance of alleged excessive force at his deposition.  *Id.*  However, defendants do not dispute that Deputies Hearn, Davidson, and Petrovits all witnessed the transport of Mr. Barrow from the interview room to the safety cell.  *Id.*

Whether Deputies Hearn, Davidson, and Petrovits failed to protect Mr. Barrow depends on whether Deputies Deering and Kaiwi did, in fact, handcuff Mr. Barrow too tightly and then squeeze on the over-tight cuffs, causing unnecessary pain to Mr. Barrow.  If Deputies Deering and Kaiwi did use excessive force, and Deputies Hearn, Davidson, and Petrovits witnessed that excessive force but did not act, a jury could find that Deputies Hearn, Davidson, and Petrovits failed to protect Mr. Barrow.  As discussed above, the Court finds a genuine dispute of material fact as to whether Deputies Deering and Kaiwi used excessive force on Mr. Barrow.  *See* Section II.B.1.  Thus, drawing all reasonable inferences in Mr. Barrow's favor, the Court cannot say that Deputies Hearn, Davidson, and Petrovits did not fail to protect Mr. Barrow as a matter of law and on that basis denies defendants' motion for summary judgment as to those claims against those defendants.

### 3.    Qualified immunity

The doctrine of qualified immunity shields a government official performing discretionary functions from individual liability for civil damages if the official's conduct does not violate a clearly established constitutional right.  *Castro*, 833 F.3d at 1066–67.  Where, as here, defendants assert qualified immunity at summary judgment, courts conduct a two-prong inquiry.  *Tolan v. Cotton*, 572 U.S. 650, 655 (2014).  Viewing the record in the light most favorable to the non-moving party, the Court considers "(1) whether there has been a violation of a constitutional right; and (2) whether that right was clearly established at the time of the officer's alleged misconduct."  *Lal v. California*, 746 F.3d 1112, 1116 (9th Cir. 2014).  A court may exercise its discretion to address either prong first.  *Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

With respect to the first step of the qualified immunity analysis, the Court has already concluded that genuine disputes of material fact exist with respect to whether defendants used excessive force against Mr. Barrow or failed to protect him, in violation of the Fourteenth

Amendment. *See supra* Section II.B.1.

With respect to the second step of the qualified immunity analysis, defendants essentially argue that they did not commit any constitutional violations based on *their* account of what occurred. Dkt. No. 20 at 11–12. However, the question on summary judgment is whether, in view of Mr. Barrow's version of the facts, defendants violated no clearly established constitutional rights, as a matter of law. *See Torres*, 548 F.3d at 1210 (explaining that "defendants are only entitled to qualified immunity as a matter of law if, taking the facts in the light most favorable to [the plaintiff], they violated no clearly established constitutional right"); *see also Nehad*, 2019 WL 3023147, at *10–11 (reversing grant of qualified immunity where district court incorrectly construed facts in a light most favorable to defendant).

Defendants do not argue that the misconduct Mr. Barrow says Deputies Deering and Kaiwi committed cannot be considered violations of a clearly established constitutional right of a pretrial detainee to be free from excessive force. *See, e.g.*, *Hudson v. McMillian*, 503 U.S. 1, 4 (1992) (holding that use of excessive physical force against a prisoner, including kicking and punching, may constitute cruel and unusual punishment even when inmate does not suffer serious injury); *Schwenk v. Hartford*, 204 F.3d 1187, 1197 (9th Cir. 2000) ("A sexual assault on an inmate by a guard—regardless of the gender of the guard or the prisoner—is deeply offensive to human dignity. . . . Where guards themselves are responsible for the rape and sexual abuse of inmates, qualified immunity offers *no* shield.") (internal quotation marks and citations omitted; emphasis original). In addition, "it is well-established that overly tight handcuffing can constitute excessive force." *Wall v. Cty. of Orange*, 364 F.3d 1107, 1112 (9th Cir. 2004).

Similarly, defendants do not dispute that pretrial detainees enjoy a clearly established right to be protected from harm, including harm from prison officials. *See, e.g.*, *Davis v. Kissinger*, 465 F. App'x 715 (9th Cir. 2012) (affirming denial of qualified immunity where plaintiff raised genuine dispute of material fact as to whether defendants used excessive force against him or failed to protect him from the use of excessive force); *Robins v. Meecham*, 60 F.3d 1436, 1442 (9th Cir. 1995) (affirming denial of summary judgment against correctional officers who failed to intervene to protect inmate from attack by other inmates).

Other courts have found summary judgment inappropriate in similar circumstances. *See, e.g.*, *LaLonde v. Cty. of Riverside*, 204 F.3d 947, 960 (9th Cir. 2000) (reversing grant of qualified immunity where plaintiff presented evidence that, after one officer knocked him to the floor and pepper-sprayed him, another officer caused significant pain by forcefully putting his knee into the plaintiff's back during the handcuffing at plaintiff's home; the officers then required him to sit handcuffed and with pepper-spray burning his face for about 20–30 minutes, during which time the officers refused to loosen the handcuffs despite the plaintiff telling them the pepper-spray was burning and the handcuffs were cutting off his circulation, causing plaintiff to suffer ongoing back and wrist pain as a result); *Meredith v. Erath*, 342 F.3d 1057, 1060, 1061 (9th Cir. 2003) (finding no qualified immunity and reversing summary judgment because a reasonable jury could find excessive force where officer grabbed detainee by the arm during execution of a search warrant, forcibly threw her to the floor, handcuffed her while twisting her arms, and did not respond for 30 minutes to her complaints that the handcuffs were too tight and causing pain); *Alexander v. Cty. of Los Angeles*, 64 F.3d 1315, 1322–23 (9th Cir. 1995) (reversing summary judgment of qualified immunity and holding that although it was "close," it could not be said as a matter of law that the officers' use of force was reasonable where (1) robbery suspect was handcuffed and forced to remain handcuffed for 45–60 minutes, after being slammed into a car, carried and pushed into the back of a police car with his hands behind his back; (2) officers waited 35–40 minutes before adjusting handcuffs after detainee complained about the handcuffs; and (3) detainee's hand was still swollen and numb nine months after the incident); *Palmer v. Sanderson*, 9 F.3d 1433, 1434–35 (9th Cir. 1993) (finding that district court properly denied qualified immunity on excessive force claim where officer allegedly yanked out of a car 67–year-old plaintiff who had mobility issues due to a recent stroke, "handcuffed him, and pushed him into the back seat of the patrol car with such force that [he] fell over sideways," and plaintiff claimed that "the handcuffs were tight enough to cause pain and discoloration to his wrists [with bruises lasting for several weeks], and that [officer] refused his request to loosen them"); *Hansen v. Black*, 885 F.2d 642, 645 (9th Cir. 1989) (reversing grant of summary judgment to defendant officers who handcuffed plaintiff in an abusive manner, causing physical injuries).

14

Thus, it was clearly established as of May 2017 that punching and kicking, overtight handcuffs, and sexual assault violate a detainee's constitutional right to be free from excessive force and to be protected from harm from other prison officials. Accordingly, the Court denies defendants' motion for summary judgment on the issue of qualified immunity.

## III. PLAINTIFF'S MOTION FOR LEAVE TO AMEND

### A. Legal Standard

Rule 15(a) of the Federal Rules of Civil Procedure governs motions for leave to amend and provides that "[t]he court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). The Court has discretion to grant leave to amend under Rule 15(a). *United Bhd. of Carpenters and Joiners of Am. v. Bldg. and Const. Trades Dep't, AFL-CIO*, 770 F.3d 834, 845 (9th Cir. 2014). Leave need not be granted where the amendment would cause the opposing party undue prejudice, is sought in bad faith, constitutes an exercise in futility, or creates undue delay. *Foman v. Davis*, 371 U.S. 178, 182 (1962). However, "[a]bsent prejudice, or a strong showing of any of the remaining *Foman* factors, there exists a presumption under Rule 15(a) in favor of granting leave to amend." *Eminence Capital LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003).

### B. Discussion

Mr. Barrow seeks to "clarify[] the claims" by adding specific causes of action for specific defendants, as the operative FAC (which Mr. Barrow drafted pro se) does not specify any causes of action. The proposed second amended complaint ("proposed SAC") lists claims for excessive force, failure to protect, and retaliation. Dkt. No. 43 ¶¶ 30-58. The proposed SAC does not contain any new factual allegations or any allegations that differ substantively from the operative FAC, other than a claim for municipal liability as to the City and County of San Francisco under *Monell v. Dep't of Social Servs. of the City of New York*, 436 U.S. 658 (1978). *Id.* ¶ 51.

Defendants oppose Mr. Barrow's motion for leave to amend on the ground that the proposed amendments would be futile, cause undue delay, and prejudice them. Dkt. No. 46 at 4–8. Defendants do not contend that Mr. Barrow's request to amend is made in bad faith. The Court addresses each of the defendants' arguments in turn.

15

### 1.       Prejudice

Undue prejudice may be established where "a motion to amend was made after the cutoff date for such motions, or when discovery had closed or was about to close." *Dep't of Fair Empl. & Hous. v. Law Sch. Admission Council, Inc.*, No. 12-cv-1830 EMC, 2013 WL 485830, at *5 (N.D. Cal. 2013) (citing cases); *see also Lockheed Martin Corp. v. Network Solutions, Inc.*, 194 F.3d 980, 986 (9th Cir. 1999) ("A need to reopen discovery and therefore delay the proceedings supports a district court's finding of prejudice from a delayed motion to amend"). The party opposing amendment bears the burden of showing prejudice. *DCD Programs, Ltd. v. Leighton*, 833 F.2d 183, 187 (9th Cir. 1987). A finding of prejudice is not automatic but dependent upon a party's ability to articulate *why* a late amendment is prejudicial. *Allen v. Bayshore Mall*, No. 12-cv-02368-JST, 2013 WL 6441504, at *4-5 (N.D. Cal. Dec. 9, 2013).

On February 6, 2018, the Court determined that Mr. Barrow had stated claims for excessive force against Deputies Deering and Kaiwi and failure to protect claims against Deputies Hearn, Davidson, and Petrovits, and set a schedule for further proceedings in the case, including briefing on a motion for summary judgment. Dkt. No. 8 at 3. Defendants subsequently filed their motion for summary judgment on August 6, 2018. Dkt. No. 20. Briefing on defendants' summary judgment motion closed on September 14, 2018. Dkt. No. 31.

Defendants assert that allowing Mr. Barrow to amend his complaint at this stage would cause undue prejudice. Dkt. No. 46 at 5–7. In particular, defendants contend that "[t]he passage of almost two years from the date of the alleged incident" to the date Mr. Barrow sought leave to amend prejudices them, because witnesses' memories will have faded after such a long period of time. The Court is not unsympathetic to this argument. While delay alone is not sufficient ground for denial of leave to amend, *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981), a showing of prejudice based on delay must be considered.

Defendants contend that the passage of time is prejudicial because witnesses' memories have faded, making it "significantly more difficult, if not impossible, for Defendants to re-investigate, re-litigate, and re-formulate [their] defenses," especially after the time[5] and effort

---

[5] On February 6, 2018, the Court issued its order directing defendants to file their summary

1   defendants have already expended in deposing Mr. Barrow and preparing their summary judgment

2   motion based on the claims as to which the Court directed them to move. Dkt. No. 46 at 6–7.

3   Defendants argued at the hearing that they face prejudice in the form of being required to prepare

4   for depositions and to review the history of Mr. Barrow's grievances. But defendants

5   acknowledged at the hearing that they remain employed as sheriff's deputies and that they have

6   already provided testimony in support of their summary judgment motion, which suggests

7   defendants face few—if any—obstacles in obtaining the information necessary to defend against

8   Mr. Barrow's claims. Dkt. No. 20-1 ¶ 1; Dkt. No. 20-2 ¶ 1; Dkt. No. 20-3 ¶ 1; Dkt. No. 22 ¶ 1;

9   Dkt. No. 23 ¶ 1.

10          Defendants principally rely on case law in which leave to amend was denied because the

11  proposed amendments included entirely new claims or theories of liability. *See Jackson v. Bank of*

12  *Hawaii*, 902 F.2d 1385, 1388 (9th Cir. 1990) (finding prejudice because addition of new claims

13  "alters the circumstances that determine the insurer's obligations to the Bank" and "would require

14  appellees to relitigate a portion of their state court action with their insurer on the different theories

15  raised by the" proposed new claims); *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074,

16  1079 (9th Cir. 1990) (denying leave to amend "in light of the radical shift in direction posed by"

17  new claims under the Racketeer Influenced and Corrupt Organizations Act, criminal depredation

18  and trespass statutes, and 42 U.S.C. § 1985, "their tenuous nature, and the inordinate delay"); *M/V*

19  *American Queen v. San Diego Marine Constr. Corp.*, 708 F.2d 1483, 1492 (9th Cir. 1983)

20  (denying leave to amend because, among other things, the "new allegations would totally alter the

21  basis of the action, in that they covered different acts, employees and time periods necessitating

22  additional discovery"). Those cases are distinguishable from the motion for leave presented here.

23  Mr. Barrow's proposed amendments regarding his excessive force and failure to protect claims do

24  not include any new facts or theories. The amendments merely clarify the nature and scope of Mr.

25  Barrow's existing claims. Specifically, the proposed SAC lists specific causes of action against

26  specific defendants. Defendants and the Court have already construed Mr. Barrow's existing FAC

27  _____

28  judgment motion by May 8, 2018. Dkt. No. 8. Defendants requested and the Court granted an
    additional 90-day extension of that deadline until August 6, 2018. Dkt. No. 17.

as asserting claims for excessive force and failure to protect in violation of the Fourteenth Amendment. Dkt. No. 8 at 3; Dkt. No. 20 at 1. These proposed amendments to the operative complaint expressly state claims for excessive force and failure to protect under the Fourteenth Amendment. Dkt. No. 43-1 ¶¶ 31-53.

Mr. Barrow's proposed amendments do include an additional claim for retaliation following Mr. Barrow's complaint against a deputy for pressuring him to participate in a "fight club." This claim was not identified in the Court's screening order, and defendants did not address it in their motion for summary judgment. However, Mr. Barrow's retaliation claim does not rely on any new allegations of fact; rather, the claim relies on existing allegations of fact in the operative complaint. Dkt. No. 7 at 5 ("It seems like ever since I told on [D]eputy Staely for trying to involve me in fights with multiple inmates he calls a fight club, I have been targeted by multiple deputies since then."). Defendants' assertion that Mr. Barrow "did not include those allegations at any point in the litigation, including his deposition,"[6] is not correct. Dkt. No. 46 at 5.

If the Court permits the addition of a retaliation claim, it must afford defendants an opportunity to further investigate that claim and the supporting allegations. While that further investigation may add expense and delay in this matter, the Court concludes that permitting this claim to proceed does not unduly prejudice defendants and is consistent with the presumption favoring amendment, particularly as the underlying factual allegations were included in the operative complaint. *See Phoenix Solutions, Inc. v. Sony Elecs., Inc.*, 637 F. Supp. 2d 683, 692 (N.D. Cal. 2009) ("Federal Rule of Civil Procedure 15 permits amendments to add new claims even when a motion for summary judgment is pending"); *Pineida v. Lee*, No. 12-cv-01171-JST, 2014 WL 2927160, at *8 (N.D. Cal. June 26, 2014) (denying pending motion for summary judgment without prejudice and granting motion for leave to amend to add new defendants and new claim for First Amendment retaliation).

---

[6] It appears that defendants did not inquire about the alleged "fight club" at Mr. Barrow's deposition, although they had the opportunity to do so. Dkt. No. 21-1 at 57:6–58:18 (describing encounter with Deputy Staley, including how Deputy Staley "wanted [him] to fight" and stating that "after I did those incidents, I felt like Deputy Davidson was always after me, always out to get me . . . ."). The Court appreciates that defendants may have chosen not to pursue a line of inquiry that did not appear to relate to a specific claim for relief.

### 2. Delay

Denying leave to amend on the basis of undue delay is disfavored "[w]here there is a lack of prejudice to the opposing party and the amended complaint is obviously not frivolous, or made as a dilatory maneuver in bad faith." *United States v. Pend Oreille Pub. Util. Dist. No. 1*, 926 F.2d 1502, 1511 (9th Cir. 1991) (quoting *Howey v. United States*, 481 F.2d 1187, 1190–91 (9th Cir. 1973)). "[D]elay alone no matter how lengthy is an insufficient ground for denial of leave to amend." *Webb*, 655 F.2d at 980.

As discussed above, defendants have not shown that they would suffer prejudice as a result of the proposed amendments or that Mr. Barrow has acted in bad faith. Although the case has been pending for nearly two years, no trial or pretrial conferences dates have been set. *See DCD Programs*, 833 F.2d at 188 (finding no unjust delay or resulting prejudice to the party opposing amendment where the "case is still at the discovery stage with no trial date pending, nor has a pretrial conference been scheduled"). Mr. Barrow proceeded pro se until he obtained counsel, who made an initial appearance on February 27, 2019, and immediately indicated his intent to seek leave to amend. Dkt. Nos. 32, 35. Under such circumstances, the Court finds that the delay occasioned by the proposed amendment is not substantial and does not outweigh the considerations favoring leave to amend.

### 3. Futility

"[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense." *Vietnam Veterans of Am. v. C.I.A.*, 288 F.R.D. 192, 219 (N.D. Cal. 2012) (quoting *Miller v. Rykoff-Sexton, Inc.*, 845 F.2d 209, 214 (9th Cir. 1988)). "[D]enial [of a motion to amend] on this ground is rare and courts generally defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed." *Clarke v. Upton*, 703 F. Supp. 2d 1037, 1043 (E.D. Cal. 2010) (citing *Netbula, LLC v. Distinct Corp.*, 212 F.R.D. 534, 539 (N.D. Cal. 2003)).

Defendants argue that paragraph 51 of the proposed SAC, which pleads a *Monell* claim for municipal liability, is futile because it is conclusory and fails to satisfy the requirements of Rule 8

of the Federal Rules of Civil Procedure. Dkt. No. 46 at 7. Defendants also argue that Mr. Barrow

has not stated a viable First Amendment retaliation claim. *Id.* at 7–8.

### a. *Monell* allegations

Paragraph 51 of the proposed SAC states in its entirety:

> 51. The foregoing violation of Plaintiff's constitutional rights
> occurred as the result of the deliberate, reckless, and malicious acts,
> omissions, and practices of the City and County of San Francisco
> Sheriff's Department. Plaintiff is informed and believes that the
> City has sanctioned and ratified its sheriff's deputies' actions to
> engage in the deliberate indifference to Plaintiff's constitutional
> rights, including in this case[,] failed to train and supervise its
> deputies properly to ensure they do not use unnecessary force upon a
> pre-trial detainee.

Dkt. No. 43-1 ¶ 51.

Defendants contend that paragraph 51 is conclusory and merely recites the elements of a

*Monell* claim. Dkt. No. 46 at 7 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). Mr. Barrow

concedes that paragraph 51 is conclusory and agrees to withdraw the language from the proposed

amendments. Dkt. No. 48 at 5. Accordingly, the Court denies Mr. Barrow's request to amend his

complaint to add paragraph 51. With no *Monell* claim against it, the San Francisco Sheriff's

Department is dismissed from this action.

### b. First Amendment retaliation

"Within the prison context, a viable claim of First Amendment retaliation entails five basic

elements: (1) An assertion that a state actor took some adverse action against an inmate (2)

because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

correctional goal." *Rhodes v. Robinson*, 408 F.3d 559, 567–68 (9th Cir. 2005). "In this context,

and at the pleading stage," a litigant is not required, "*per impossibile*, to demonstrate a total

chilling of his First Amendment rights to file grievances and to pursue civil rights litigation in

order to perfect a retaliation claim." *Id.* at 568 (emphasis in the original). "Speech can be chilled

even when not completely silenced." *Id.* The *Rhodes* standard for retaliation claims applies

equally to pretrial detainees. *See Grenning v. Bisson*, 382 F. App'x 574, 575 (9th Cir. 2010)

(applying *Rhodes* to reverse dismissal pretrial detainee's retaliation claim); *Nyland v. Calaveras*

*Cty. Sheriff's Jail*, 688 F. App'x 483, 485 (9th Cir. 2017) (applying *Rhodes* to affirm dismissal pretrial detainee's retaliation claim).

A detainee's First Amendment rights include the right to file complain about his treatment while confined and to pursue civil litigation. *See Rhodes*, 408 F.3d at 567; *see also Coleman v. Napa Cty. Dep't of Corr.*, No. 18-cv-04751-SI, 2019 WL 1440912, at *6 (N.D. Cal. Apr. 1, 2019) (screening complaint pursuant to 28 U.S.C. § 1915A and determining that amended complaint stated a cognizable retaliation claim based on, among other things, pretrial detainee's filing of grievances against prison staff); *Rojas v. Brown*, No. 1:17-cv-01514-DAD-JLT, 2019 WL 1220768, at *2 (E.D. Cal. Mar. 15, 2019) (holding that verbal complaints constitute activity protected under the First Amendment and listing cases so holding); *Wheat v. Cty. of Alameda*, No. C 11-4509 MEJ, 2012 WL 966949, at *3 (N.D. Cal. Mar. 21, 2012) (denying motion to dismiss pretrial detainee's retaliation claim where speech alleged to be chilled was the filing of a grievance). A plaintiff pleading retaliatory intent "must allege a causal connection between the adverse action and the protected conduct. *Watison v. Carter*, 668 F.3d 1108, 1114 (9th Cir. 2012). Here, Mr. Barrow alleges in the proposed retaliation claim that he was subjected to excessive force "shortly after he informed officials at the jail that Sheriff's Deputy Staely had attempted to coerce him into engaging in fights with multiple inmates that have been dubbed 'The fight club'." Dkt. No. 43-1 ¶ 28. Retaliation may be inferred from these allegations. *See Watison*, 668 F.3d at 1114. While defendants may ultimately show that Mr. Barrow's retaliation claim has no merit, the facts alleged in the proposed amendment are sufficient for purposes of leave to amend under Rule 15(a). *Netbula*, 212 F.R.D. at 539 ("Ordinarily, courts will defer consideration of challenges to the merits of a proposed amended pleading until after leave to amend is granted and the amended pleading is filed.").

As the Court cannot say that there is no set of facts that could be proved in support of the proposed retaliation claim, the amendment is not futile. *Vietnam Veterans*, 288 F.R.D. at 219 ("[A] proposed amendment is futile only if no set of facts can be proved under the amendment to the pleadings that would constitute a valid and sufficient claim or defense.") (internal quotation marks omitted).

United States District Court
Northern District of California

IV.     **CONCLUSION**

For the foregoing reasons, the Court denies without prejudice defendants' motion for summary judgment and grants Mr. Barrow's motion for leave to amend, with the exception of Mr. Barrow's proposed *Monell* claim against the San Francisco Sheriff's Department (paragraph 51 of the proposed SAC).  Mr. Barrow shall file a revised version of his second amended complaint by **August 19, 2019**.  The Clerk of the Court shall dismiss all claims against the San Francisco Sheriff's Department only.

The parties shall appear for an initial case management conference on **September 24, 2019 at 1:30 p.m.** in Courtroom 2, Fifth Floor, 280 South First Street, San Jose, California 95113.  The parties shall file a joint case management statement by **September 17, 2019**.

**IT IS SO ORDERED.**

Dated: August 5, 2019

VIRGINIA K. DEMARCHI
United States Magistrate Judge